IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| THIELE KAOLIN COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>ENVIRONMENTAL RESOURCES<br>MANAGEMENT--SOUTHEAST, INC.,<br>d/b/a ERM SOUTHEAST, INC.,<br><br>      Defendant. | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Thiele Kaolin Company ("Thiele"), and states for its Complaint against the Defendant, Environmental Resources Management--Southeast, Inc. d/b/a ERM Southeast, Inc. ("ERM") the following claims for relief:

## INTRODUCTION

1.

In July 2021, Thiele entered into an agreement to purchase certain mining and industrial mineral processing facilities and assets in and around Sandersville, Georgia (the "Mineral Facilities"). Prior to closing on the purchase, Thiele sought an environmental assessment of the Mineral Facilities to ensure compliance with state and federal environmental laws and to understand the environmental risks and liabilities that might materially affect the value of the Mineral Facilities it intended to purchase. Consequently, Thiele entered into an environmental services agreement with ERM, an environmental consulting company, to complete a Phase I Environmental Site Assessment and a Limited Environmental Compliance Review of the Mineral Facilities, operations, properties, and permitting. ERM conducted the Site Assessment and Limited Environmental Compliance Review and submitted a final report with its findings to

Thiele. However, ERM breached its contract and negligently failed to include several instances of actual or potential non-compliance with federal and state environmental laws and regulations occurring at the Mineral Facilities in its report. ERM also breached the agreement by failing to perform its services pursuant to the required standard of care and by failing to identify environmental risks that materially affected the value of the Mineral Facilities or required remediation.

2.

As a direct and proximate result of ERM's improper breaches of contract, negligence, and professional negligence, Thiele has incurred damages, including but not limited to, remediation costs exceeding $800,000.00, as well as attorney's fees and litigation expenses. Accordingly, Thiele is entitled to recover all damages, fees, and expenses caused by (a) ERM's negligent acts, errors, or omissions, or willful misconduct in failing to identify recognized environmental conditions and potential or actual non-compliance in its environmental risk report and (b) ERM's breach of the agreement.

**PARTIES**

3.

Thiele is a mining and mineral processing company incorporated in the State of Georgia with its principal place of business located in Sandersville, Georgia.

4.

Upon information and belief, ERM is an environmental consulting firm incorporated in the State of Tennessee with its principal place of business located in Franklin, Tennessee.

## JURISDICTION AND VENUE

5.

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because, upon information and belief, there is complete diversity of citizenship between the plaintiff and defendant at the time of filing this Complaint, and the amount in controversy exceeds $75,000.

6.

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims at issue in this action occurred within this District. ERM may be served with process via its registered agent, Cogency Global Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Fulton County, GA, 30076.

## FACTUAL BACKGROUND

7.

Founded in 1946, Thiele is one of the world's leading sources for processed minerals. Thiele mines and processes kaolin, a soft white clay mineral that is an essential ingredient in the making of paper, rubber, paint, and many other products.

8.

ERM is an environmental consulting firm whose website boasts that it is the "largest global pure play sustainability consultancy." Further, ERM's website states that its "diverse team of **world-class experts** supports clients…to operationalize sustainability, underpinned by our ***deep technical expertise in addressing their environmental… issues***."

9.

ERM claims to employ professional environmental engineers to perform site investigations and environmental risk assessments.

3

10.

On or about July 2021, Thiele entered into an agreement of sale to purchase the Mineral Facilities in and around Sandersville, Georgia.

11.

The Mineral Facilities consist of 43 active and inactive mining sites and other assets.

12.

As part of its due diligence process and to ensure compliance with state and federal environmental laws, Thiele retained ERM to conduct a Phase I Environmental Site Assessment ("Site Assessment") of the Mineral Facilities and a Limited Environmental Compliance Review ("LCR") of the permitting for the Mineral Facilities.

13.

On or about April 6, 2021, Thiele entered into a Master Agreement for Environmental Services with ERM (the "Agreement").

14.

Among other things, ERM agreed to (1) identify environmental risks that might materially affect the value of the Mineral Facilities; (2) identify any actual or potential non-compliance issues with state and federal environmental laws; and (3) provide estimates of methods and costs to correct actual or potential non-compliance issues.

15.

In Exhibit A of Agreement at p.1, ERM agreed that:

> ERM will identify any actual or potential non-compliance issues, provide estimates of the technical approaches, technologies, or methods to correct such actual of potential non-compliance, the cost and expense to

correct such actual or potential non-compliance, and a schedule for resolving any actual or potential non-compliance.

16.

Further, in Exhibit A of the Agreement at p.1, the parties agreed that:

The main objectives of the work are to identify environmental risks that might be material to the value of the properties, including recognized environmental conditions ("RECs"), to provide recommendations for these, so as to provide Client with a clear and exhaustive view of the properties from an environmental liability stand-point.

17.

In Paragraph 2 of the Agreement, the parties agreed that all "[s]ervices shall be performed in accordance with generally accepted industry principles and practices, in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions."

18.

Also, Paragraph 12 of the Agreement provides that:

Consultant shall exercise that degree of care and skill ordinarily exercised under similar circumstances by members of the environmental engineering and consulting profession performing the kinds of services to be performed hereunder and practicing in the same or similar locality at the same time. Save the foregoing standard, no representation, warranty, condition or other term express or implied as to the quality or nature of Services is given or accepted by Consultant, and all such representations, warranties, conditions and other such terms are excluded to the fullest extent permitted by law.

19.

From April 2021 to June 2021, ERM conducted the Site Assessment and LCR of the Mineral Facilities and prepared reports pursuant to the Agreement.

20.

On June 25, 2021, ERM submitted final reports with its findings from the Site Assessment and LCR of the Mineral Facilities to Thiele (the "Final Reports").

21.

Thiele relied upon the professional environmental consulting and engineering expertise of ERM to: (1) identify environmental risks that might materially affect the value of the Mineral Facilities; (2) identify any actual or potential non-compliance issues with state and federal environmental laws; and (3) provide estimates of methods and costs to correct actual or potential non-compliance issues.

22.

However, after the Final Reports were submitted, Thiele discovered several instances of actual or potential non-compliance with federal and state environmental laws and regulations at various mining sites in the Mineral Facilities that ERM negligently omitted from the Final Reports and breached its contract in omitting.

23.

ERM failed to identify: (a) multiple instances of stormwater discharges causing erosion and sediment accumulation beyond certain mine site boundaries; (b) discharges of mine pit wastewater from locations not covered in the National Pollutant Discharge Elimination System ("NPDES") permit; and (c) several areas of potential fill to wetlands or other waters of the United States occurring at mining sites in the Mineral Facilities to Thiele.

24.

ERM also failed to identify: (a) haul road discharges which carried sediment outside certain mine permit boundaries; (b) a pit dewatering hose routed directly off-site into an

unpermitted location; (c) potential noncompliant discharges; (d) potential or actual non-compliance related to a naturalized wetland/stream area; and (e) excess wastewater/stormwater flows at certain mine sites in the Mineral Facilities.

25.

Other errors and/or omissions from the Final Reports, without limitation, include: (a) the failure to discover that a majority of the outfalls were not recognized by permit-required signage and (b) the failure to determine that some mine pits were not utilizing best management practices for sediment, erosion, and stormwater control.

26.

Consequently, after Thiele closed on the purchase of the Mineral Facilities, Thiele was forced to incur significant costs to remediate the actual or potential noncompliant issues ERM negligently omitted in its Final Reports. Thiele was also required to make a voluntary disclosure in April, 2022 of non-compliant conditions to the U.S. Environmental Protection Agency under its *Interim Approach to Applying the Audit Policy to New Owners* (Aug. 1, 2008).

27.

Paragraph 11 of the Agreement provides that:

> Consultant shall indemnify and hold harmless Client, its affiliates and their respective directors, officers, employees, shareholders, agents and independent contractors (collectively, together with Client, "Client Indemnitees") from and against all liability, claims, suits, losses, damages, costs and demands, including reasonable legal expenses and attorney's fees connected therewith (collectively "Damages"), arising out of this Agreement or any Project Contract, to the extent Damages are caused by the negligent acts, errors, or omissions, or willful misconduct of Consultant or its agents.

28.

On May 25, 2022, Thiele notified ERM, in accordance with the terms of the Agreement, of its claims and damages caused by ERM's breaches, negligent actions, errors, omissions, or willful misconduct.  Thiele has afforded ERM all notices required under the Agreement.  Thiele has satisfied all conditions precedent to the initiation of this action.

29.

To date, ERM has failed to compensate or indemnify Thiele for the damages caused by ERM's contractual breaches, negligent actions, errors, and omissions.

**COUNT ONE – BREACH OF CONTRACT**

30.

Pursuant to Paragraph 2 of the Agreement, ERM agreed to perform all services in accordance with generally accepted industry principles and practices, and in a manner consistent with the level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions.

31.

Pursuant to Paragraph 12 of the Agreement, ERM agreed to exercise the degree of care and skill ordinarily exercised under similar circumstances by members of the environmental engineering and consulting profession performing similar services and practicing in the same or similar locality.

32.

Pursuant to Exhibit A of the Agreement, ERM agreed to identify: (a) any actual or potential non-compliance issues; (b) provide estimates of the technical approaches, technologies, or methods to correct such actual of potential non-compliance; (c) the cost and expense to correct

such actual or potential non-compliance; (d) and a schedule for resolving any actual or potential non-compliance.

33.

Additionally, pursuant to Exhibit A of the Agreement, ERM agreed to identify environmental risks that could materially affect the value of the Mineral Facilities, including recognized environmental conditions, and to provide recommendations so Thiele had a clear and exhaustive view of the potential environmental liability at the Mineral Facilities.

34.

ERM breached the Agreement by failing to perform the Site Assessment and LCR in accordance with its terms. *See* Declaration of Robert "TY" Hawkins ("Hawkins Decl.") attached hereto as **Exhibit 1** and incorporated herein by reference.

35.

ERM breached the Agreement by failing to identify numerous instances of actual or potential non-compliance with state and federal environmental laws at the Mineral Facilities.

36.

ERM breached the Agreement by failing to identify significant environmental risks that materially affected the value of the Mineral Facilities and resulted in regulatory disclosures and remediation.

37.

ERM breached the Agreement by failing to provide accurate estimates of methods and costs to correct actual or potential non-compliance issues.

38.

As a direct and proximate consequence of ERM's breaches of the Agreement, Thiele has incurred, and continues to incur, significant damages, attorney's fees, and expenses.

39.

Thiele is entitled to the recover all such damages, fees, and expenses from ERM.

## COUNT TWO – PROFESSIONAL NEGLIGENCE

40.

Thiele re-alleges each and every allegation set forth in paragraphs 1 through 39 of the Complaint and fully incorporates the same herein.

41.

As a professional environmental consulting firm retained by Thiele to provide professional environmental engineering and consulting services, ERM owed Thiele a legal duty of care to exercise a reasonable degree of skill and care, as ordinarily employed by other professionals under similar conditions and like surrounding circumstances.

42.

ERM breached the duty of care it owed to Thiele and the services it performed through its professionals and staff fell below the applicable standard of care.

43.

Without limitation, ERM's breaches of the duty of care include, but are not limited to:

a. Failing to identify several actual or potential non-compliance issues with state and federal environmental laws at the Mineral Facilities in its Final Reports;

b. Failing to discover several actual or potential non-compliance instances with state

and federal environmental laws at the Mineral Facilities;

c. Failing to provide accurate estimates of methods and costs to correct actual or potential non-compliance issues at the Mineral Facilities;

d. Failing to properly and accurately complete the Final Reports;

e. Failing to identify numerous environmental risks that materially affected the value of the Mineral Facilities;

f. Failing to act as a reasonably prudent professional environmental engineer and consultant would have acted under similar conditions and like surrounding circumstances; and

g. Other breaches that may be discovered at a later date or through the course of discovery.

44.

Mr. Hawkins avers that ERM's actions fell below the appropriate standard of care and provides specific negligent acts or omissions by ERM and the factual basis for the same.[1] (Hawkins Decl.).

45.

As a direct and proximate result of ERM's breaches of the duty of care, Thiele has incurred, and continues to incur, significant damages, attorney's fees, and expenses.

---

[1] O.C.G.A. § 9-11-9.1 is a state court pleading standard and not required for an action in the federal courts. *Roberts v. Jones*, 390 F. Supp. 2d 1333, 1337 (M.D. Ga. 2005)(it is well settled law that in a diversity action the Georgia statute, O.C.G.A. § 9–11–9.1, requiring plaintiffs to file an affidavit of an expert is inapplicable. The sufficiency of a plaintiff's complaint is judged by the standard set out in Federal Rule 8(a) which does not require the affidavit of an expert); *see Brown v. Nichols*, 8 F.3d 770, 773 (11th Cir.1993)(federal law governs the pleading requirements in a diversity action).

46.

Thiele is entitled to recover all such damages, attorney's fees, and expenses from ERM.

## COUNT THREE – NEGLIGENCE

47.

Thiele re-alleges each and every allegation set forth in paragraphs 1 through 46 of the Complaint and fully incorporates the same herein.

48.

ERM owed Thiele a duty of care in performing the Site Assessment and LCR services for Thiele.

49.

Without limitation, ERM breached the duty of care owed to Thiele by failing to: (1) identify environmental risks that materially affected the value of the Mineral Facilities; (2) identify numerous actual or potential non-compliance issues with state and federal environmental laws at the Mineral Facilities; and (3) provide accurate estimates of methods and costs to correct actual or potential non-compliance issues.

50.

As a direct and proximate consequence of ERM's breaches of the duty of care, Thiele has incurred, and continues to incur, significant damages.

51.

Thiele is entitled to the recover all such damages from ERM.

## COUNT FOUR – ATTORNEY'S FEES AND LITIGATION EXPENSES

52.

Thiele re-alleges each and every allegation set forth in paragraphs 1 through 51 of the Complaint and fully incorporates the same herein.

53.

Pursuant to Paragraph 11 of the Agreement, the parties agreed that ERM shall indemnify Thiele from all reasonable legal expenses and attorney's fees caused by the negligent acts, errors, or omissions, or willful misconduct of ERM.

54.

In addition to its contractual liability for fees and expenses, ERM has acted in bad faith, has caused Thiele unnecessary trouble and expense, and has been stubbornly litigious within the meaning of O.C.G.A. § 13-6-11.

55.

Accordingly, Thiele is entitled to recover its attorney's fees and litigation expenses arising out of the prosecution of this action.

**WHEREFORE**, Thiele prays:

(1) for a trial by jury on all issues so triable;

(2) for judgment in its favor on all claims in the Complaint and against Defendant ERM;

(3) for damages in an amount to be determined at trial, plus interest thereon as provided by law;

(4) for an award of all costs, expenses of litigation and reasonable attorney's fees; and

(5) for all such other and further relief as this Court deems equitable and proper.

Respectfully submitted, this 24th day of June, 2022.

TROUTMAN PEPPER HAMILTON SANDERS LLP

/s/  William M. Droze
WILLIAM M. DROZE
Georgia Bar No. 231039
CHARLES E. PEELER
Georgia Bar No. 570399
KADEISHA WEST
Georgia Bar No. 640699
600 Peachtree Street, N.E. Suite 3000
Atlanta, GA 30308
william.droze@troutman.com
charles.peeler@troutman.com
kadeisha.west@troutman.com
(404) 885-3000 (telephone)
(404) 885-3900 (facsimile)

*Attorneys for Plaintiff Thiele Kaolin Company*