IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **THIELE KAOLIN COMPANY,** <br><br> **Plaintiff,** <br><br> v. <br><br> **ENVIRONMENTAL RESOURCES MANAGEMENT—SOUTHEAST, INC. d/b/a ERM SOUTHEAST, INC.,** <br><br> **Defendant.** | CIVIL ACTION NO. 5:22-cv-232 (MTT) |

## ORDER

This case involves a commercial dispute between Plaintiff Thiele Kaolin Company ("Thiele") and Defendant Environmental Resources Management – Southeast, Inc. ("ERM").  Doc. 1 ¶ 1.  Thiele contends ERM failed to properly perform a site assessment and limited compliance review and thus breached the parties' Master Agreement for Environmental Consulting Services (the "Agreement").  *Id.*  Thiele's complaint alleges ERM is liable under theories of contract and tort, in addition to being liable for attorney's fees under O.C.G.A. § 13-6-11.  *Id.* ¶¶ 30-55.  ERM moved to dismiss, and filed an answer in which it asserted a counterclaim against Thiele for breach of contract and attorney's fees.  Docs. 13; 14.  Thiele, in turn, moved to dismiss ERM's counterclaim.  Doc. 23.  For the reasons that follow, both ERM's motion to dismiss (Doc. 14) and Thiele's motion to dismiss ERM's counterclaim (Doc. 23) are **DENIED**.

## I. BACKGROUND

Thiele is a mining and mineral processing company, and "one of the world's leading sources for processed minerals," specifically kaolin, which is "an essential ingredient in the making of paper, rubber, paint, and many other products." Doc. 1 ¶¶ 3, 7. To expand its operations, Thiele sought to acquire "43 active and inactive mining sites and other assets" in and around Sandersville, Georgia. *Id.* ¶¶ 10-11. "As part of its due diligence process and to ensure compliance" with applicable environmental laws, Thiele hired ERM to conduct a "Phase I Environmental Site Assessment" and a "Limited Environmental Compliance Review" of the Sandersville mineral facilities it sought to acquire. *Id.* ¶ 12. The parties entered into an Agreement on April 6, 2021, under which ERM was required to "(1) identify environmental risks that might materially affect the value of the Mineral Facilities; (2) identify any actual or potential noncompliance issues with state and federal environmental laws; and (3) provide estimates of methods and costs to correct actual or potential non-compliance issues." *Id.* ¶¶ 13-14.

ERM conducted the Site Assessment and Limited Environmental Compliance Review from April 2021 to June 2021. *Id.* ¶ 19. On June 25, 2021, ERM submitted final reports to Thiele pursuant to the Agreement. *Id.* ¶ 20. Relying on those reports, Thiele purchased the Sandersville mineral facilities in July 2021. *Id.* ¶¶ 10, 21. However, after ERM's final reports were submitted, and presumably after Thiele closed on the mineral facilities in July 2021, Thiele "discovered several instances of actual or potential non-compliance with federal and state environmental laws and regulations at various mining sites," which ERM had allegedly given a clean bill of health. *Id.* ¶ 22. For example, Thiele contends ERM failed to identify "multiple instances of stormwater discharges

causing erosion and sediment accumulation beyond certain mine site boundaries … a pit dewatering hose routed directly off-site into an unpermitted location," and the fact "that a majority of the outfalls were not recognized by permit-required signage." *Id.* ¶¶ 23-25.  Consequently, Thiele was forced to incur "significant" remediation costs after it purchased the mineral facilities and was subsequently required to disclose those non-compliant conditions to the Environmental Protection Agency in April 2022.  *Id.* ¶ 26.

In accordance with the terms of the Agreement, Thiele notified ERM on May 25, 2022, of its damages, which Thiele contends were caused by "ERM's breaches, negligent actions, errors, omissions, or willful misconduct."  *Id.* ¶ 28.  After ERM failed to compensate or indemnify Thiele, Thiele filed this action on June 24, 2022.  *Id.* ¶ 29.  Specifically, Thiele alleges ERM is liable for (1) breach of contract, (2) professional negligence, (3) negligence, and (4) attorney's fees and litigation expenses.  *Id.* ¶¶ 30-55.  ERM argues Thiele's claims must be dismissed because the Agreement's limitation of liability clause precludes all claims for damages, and even if Thiele could sue, Thiele's claimed damages do not satisfy the materiality provision of the Agreement.  Doc. 20 at 21.  ERM's answer, filed concurrently with its motion to dismiss and motion to stay discovery, also asserted a counterclaim for breach of contract, reasoning that because the Agreement's limitation of liability clause precludes suit, then Thiele's initiation of this action breached the Agreement.  Docs. 13 at 15-16; 14; 17.  Because, in Thiele's view, the Agreement does no such thing, Thiele moved to dismiss ERM's counterclaim.  Doc. 23.

## II. STANDARD[1]

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (cleaned up).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests[.]"  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may

---

[1] ERM attached the Agreement to their motion to dismiss.  Docs. 20; 20-1.  While the Court "generally must convert a motion to dismiss into a motion for summary judgment if it considers material outside the complaint," the Court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005).  Here, both those conditions are satisfied.  Accordingly, the Agreement is properly considered by the Court.

dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

### III. DISCUSSION

Georgia contract law controls the Court's interpretation of the Agreement.[2] "The cardinal rule of contractual construction is to ascertain the intent of the parties." *Knott v. Knott*, 277 Ga. 380, 381, 589 S.E.2d 99, 101 (2003) (citing O.C.G.A. § 13-2-3). Under Georgia law, contract interpretation requires three steps:

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30, 743 S.E.2d 381, 389 (2013).

"Ambiguity exists where the words used in the contract leave the intent of the parties in question—i.e., that intent is uncertain, unclear, or is 'open to various interpretations.'" *Capital Color Printing, Inc. v. Ahern*, 291 Ga. App. 101, 106, 661 S.E.2d 578, 583 (2008) (quoting *Investment Properties Co. v. Watson*, 278 Ga. App. 81, 83, 628 S.E.2d 155, 159 (2006)). "Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is 'capable of only one reasonable interpretation.'" *Id.* (quoting *Quality Foods v. Smithberg*, 288 Ga. App. 47, 51, 653 S.E.2d 486, 490 (2007)).

---

[2] The terms of the Agreement state that "[w]ith respect to any Project Contract and the Services performed thereunder, this Agreement shall be governed in all respects by the laws of the State of Georgia." Doc. 20-1 ¶ 15. Neither ERM nor Thiele contend otherwise.

"Extrinsic evidence to explain ambiguity in a contract becomes admissible only when a contract remains ambiguous after the pertinent rules of construction have been applied."  *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 334, 380 S.E.2d 686, 687 (1989).  Two statutorily mandated rules of contract construction have particular relevance here.  First, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."  O.C.G.A. § 13-2-2(4); *see also Cajun Contractors, Inc. v. Peachtree Prop. Sub, LLC*, 360 Ga. App. 390, 415, 861 S.E.2d 222, 245 (2021) ("[I]t is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another."); *VATACS Group, Inc. v. HomeSide Lending, Inc.*, 276 Ga. App. 386, 389, 623 S.E.2d 534, 538 (2005) ("[A] contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect.").  Second, "[i]f the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred.  O.C.G.A. § 13-2-2(5); *see also Dep't of Cmty. Health v. Pruitt Corp.*, 295 Ga. App. 629, 632, 673 S.E.2d 36, 39 (2009) ("Another rule of construction requires us to construe ambiguous contract provisions against the drafter.").  The Court notes, and the parties appear to agree, that the pleadings do not reveal who drafted the relevant provisions of the Agreement.  *See* Docs. 1; 22 at 13 n.4.

**A. ERM is Not Entitled to Dismissal on the Present Record**

ERM argues Thiele's claims must be dismissed because the Agreement's limitation of liability clause precludes all claims for damages, and even if Thiele could

sue, it cannot do so unless the damages at issue "were material to the values of the properties." Doc. 20 at 21. Neither argument entitles ERM to dismissal at this stage of the case.

*1. ERM Has Not Established that the Limitation of Liability Provision Bars Thiele's Lawsuit*

ERM contends the Agreement's limitation of liability provision unambiguously bars any claims for damages. *Id.* at 14-19. Specifically, ERM relies on language in the second paragraph of the limitation of liability provision that states: "IN NO EVENT SHALL ONE PARTY … BE LIABLE TO THE OTHER PARTY … FOR … ANY INCIDENTAL, SPECIAL, INDIRECT, PUNITIVE, EXEMPLARY, FINANCIAL, CONSEQUENTIAL OR ECONOMIC LOSSES OR DAMAGES OF ANY KIND OR NATURE WHATSOEVER, HOWEVER CAUSED." *Id.* at 3 (quoting Doc. 20-1 ¶ 22). According to ERM, this provision "explicitly anticipates and defeats plaintiff's claims" because it covers all types of damages available to Thiele, and nothing in the project contract says otherwise. *Id.* at 16.

ERM's reading of the limitation of liability provision voids other, much clearer, provisions of the Agreement. The Agreement's indemnification provision provides, in relevant part, that:

> Consultant shall indemnify and hold harmless Client, its affiliates and their respective directors, officers, employees, shareholders, agents and independent contractors (collectively, together with Client, "Client Indemnitees") from and against all liability, claims, suits, losses, damages, costs and demands, including reasonable legal expenses and attorney's fees connected therewith (collectively "Damages"), arising out of this Agreement or any Project Contract, to the extent Damages are caused by the negligent acts, errors, or omissions, or willful misconduct of Consultant or its agents.

> With respect to any particular Project Contract to be undertaken pursuant to this Agreement, Client agrees that Consultant Indemnitees shall not be liable to Client Indemnitees for the creation or existence of any type of hazardous or toxic waste, material, chemical, compound or substance, or any other type of environmental hazard, contamination or pollution, whether latent or patent, or the release thereof or the violation of any law or regulation relating thereto, existing at a Project Site prior to commencement of Services ("Pre-Existing Condition"), and Client shall indemnify and hold harmless Consultant Indemnitees from any and all Damages sustained by any Consultant Indemnitee in connection with any Pre-Existing Condition except to the extent such Pre-Existing Condition is exacerbated by the negligence or willful misconduct of an [sic] Consultant Indemnitee.

Doc. 20-1 ¶ 11(a)&(c).  In other words, ERM must indemnify Thiele for losses and damages suffered because of ERM's negligent or willful conduct.[3]  Consistent with that clear obligation, ERM is required to maintain "Professional Errors and Omissions Liability and pollution liability coverage" in the amount of $2 million dollars.  *Id.* ¶ 10(a).  Reinforcing the clear intent of those provisions, the Agreement's standard of care provision limits ERM's liability to Thiele for breach to $2 million dollars.  *Id.* ¶ 12(d).  Finally, the Agreement's dispute resolution provision makes clear that "[i]n the event that one party makes a claim against the other, at law or otherwise, and then fails to prove such claim, then the prevailing party shall be entitled to all costs, including attorneys' fees incurred in defending against the claim."  *Id.* ¶ 15.

In short, if the Court were to read the limitation of liability provision as ERM suggests, the indemnification, insurance, standard of care, and dispute resolution provisions would all be rendered meaningless, a construction that the Court is bound to

---

[3] In its reply, ERM contends that the Agreement's indemnity obligations are "very narrow" such that "Thiele cannot sue ERM for any remediation costs or damages incurred in connection with the various environmental conditions which Thiele now claims ERM failed to properly identify."  Doc. 24 at 5.  But ERM does not make that argument in its motion to dismiss, rather, ERM simply states "the indemnity provision has NO application here and does not save the day for plaintiff."  Doc. 20 at 19.  Accordingly, the Court will not address whether Thiele's requested relief is outside the scope of the indemnity provision.  And even if ERM made that argument, its resolution likely requires discovery.

avoid.  O.C.G.A. § 13-2-2(4); *Cajun Contractors, Inc.*, 360 Ga. App. at 415, 861 S.E.2d at 245; *VATACS Group, Inc.*, 276 Ga. App. at 389, 623 S.E.2d at 538.

Moreover, ERM's reading of the limitation of liability provision, which is dependent upon liberal use of ellipses, is suspect.  Read in full, the second paragraph of the limitation of liability provision states:

> UNLESS OTHERWISE AGREED AND EXPRESSLY SET FORTH IN A PROJECT CONTRACT, IN NO EVENT SHALL ONE PARTY, ITS AFFILIATES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, BE LIABLE TO THE OTHER PARTY AND/OR ANYONE CLAIMING BY, THROUGH OR UNDER IT, INCLUDING WITHOUT LIMITATION INSURERS, FOR ANY LOST, DELAYED OR DIMINISHED PROFITS, REVENUES, BUSINESS OPPORTUNITIES OR PRODUCTION OR FOR ANY INCIDENTAL, SPECIAL, INDIRECT, PUNITIVE, EXEMPLARY, FINANCIAL, CONSEQUENTIAL OR ECONOMIC LOSSES OR DAMAGES OF ANY KIND OR NATURE WHATSOEVER, HOWEVER CAUSED.

Doc. 20-1 ¶ 22.

The limitation of liability provision begins in its first operative clause as a routine limitation of liability for lost profits and other consequential damages—there shall be no liability for "LOST, DELAYED OR DIMINISHED PROFITS, REVENUES, BUSINESS OPPORTUNITIES OR PRODUCTION."  *Id.*  That is clear enough.  *See Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 227 Ga. App. 641, 643, 490 S.E.2d 124, 127 (1997) ("[T]he loss of other business opportunities, other profits and goodwill falls squarely within the meaning of consequential losses.").  But that clear clause is followed by a clause naming a disjointed hodgepodge of items of damages.  Oddly enough, the drafter omitted from this hodgepodge the obvious items of damages—actual, compensatory, and nominal—that one would think would be named if the drafter truly intended to disclaim, contrary to other clear provisions of the contract, all liability

"whatsoever."[4] And if the drafter's intent was to disclaim all liability "whatsoever," why did the drafter include the first clause limiting liability for consequential damages. If, as ERM argues, the second clause disclaims all liability, the first clause is superfluous. Finally, the limitation of liability provision makes no specific mention of tort liability.

In a word, the limitation of liability clause, particularly when considered in the light of the entire contract, is a mess that cannot be resolved on a motion to dismiss. For example, the Court does not know who drafted the contract, and thus lacks an important statutorily mandated tool of contract construction that could aid in resolving the ambiguous clause. O.C.G.A. § 13-2-2(5); *Pruitt Corp.*, 295 Ga. App. at 632, 673 S.E.2d at 39. Because the Agreement is ambiguous—on the one hand a clear contractual provision requires indemnification for losses and damages suffered because of ERM's negligent or willful conduct but on the other a limitation of liability clause arguably precludes that indemnification—the Court cannot say on this record that the limitation of liability provision precludes the types of damages Thiele seeks to recover here. *See Capital Color Printing, Inc.*, 291 Ga. App. at 106, 661 S.E.2d at 583.

*2. ERM's Materiality Arguments Cannot be Resolved on a Motion to Dismiss*

ERM's second argument turns on the materiality provision of the Agreement. Doc. 20 at 19-20. Under the project contract, ERM was required to "identify environmental risks that might be material to the value of the properties, including recognized environmental conditions ("RECs") to provide recommendations for these, so as to provide Client with a clear and exhaustive view of the properties from an

---

[4] The Court acknowledges that the listed items of damages could be read to encompass actual, compensatory, and nominal damages. But still the omission by name of damages typically sought in contract and tort actions is suspect.

environmental liability stand-point."  Doc. 20-1 at 17.  ERM contends that because Thiele has only identified "over $800,000 in alleged remedial damages" and the scope of work under the Agreement was "massive," then the "alleged remediation damages are *de minimis*" and thus the materiality language in the project contract precludes Thiele's suit.  Doc. 20 at 20.  But that argument necessarily turns on factual disputes which cannot be resolved by a motion to dismiss.  *Pergo (Eur.) A.B. v. Stanley Black & Decker, Inc.*, 2017 WL 3525435, at *6 (N.D. Ga. Jan. 6, 2017) ("[A] fact-intensive question, however analyzed, is not appropriate for determination on a motion to dismiss, but should be determined on summary judgment or at trial.").  To that point, ERM admits it can only "speculate[] the deal had to be over $50,000,000."  Doc. 20 at 11.  Discovery may tell.  What matters is that Thiele alleged "ERM breached the Agreement by failing to identify significant environmental risks that materially affected the value of the Mineral Facilities," and further supported that legal conclusion with plausible factual allegations.  Doc. 1 ¶¶ 7-29, 36.  Clearly the Court cannot conclude as a matter of law that the damages flowing from Thiele's alleged breach are immaterial.  *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

In summary, neither the limitation of liability provision nor the materiality provision entitles ERM to dismissal at this stage of the case.  Accordingly, ERM's motion to dismiss (Doc. 14) is **DENIED**.

**B. ERM's Counterclaim for Breach of Contract and Attorney's Fees Survives**

ERM's counterclaim asserts that because the Agreement's limitation of liability clause precludes suit, then Thiele's initiation of this action breached the Agreement

which entitles ERM to damages for that breach and attorney's fees under O.C.G.A. § 13-6-11.  Doc. 13 at 15-16.  As noted, the Court sees potential problems with ERM's interpretation of the limitation of liability provision, but the Court cannot rule as a matter of law that an ambiguous clause does not limit, to some degree, ERM's liability.  Accordingly, Thiele's motion to dismiss ERM's counterclaim (Doc. 23) is **DENIED**.

## IV. CONCLUSION

For the reasons discussed, both ERM's motion to dismiss (Doc. 14) and Thiele's motion to dismiss ERM's counterclaim (Doc. 23) are **DENIED**.  Because ERM's motion to dismiss has been resolved, ERM's motion to stay discovery (Doc. 17) is **DENIED** as moot.

**SO ORDERED**, this 27th day of April, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
